IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VANESSA GRAHAM,<br><br>        Plaintiff,<br><br>  v.<br><br>HATHAWAY LODGE, INC.,<br>HATHAWAY'S RESTAURANT AND<br>LOUNGE, SWEETWATER AT<br>HATHAWAY'S, INC., EVANGELOS<br>KYRTATAS, JOHN DOES 1-5 and 6-<br>10,<br><br>        Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil No. 14-3420 (JBS/AMD)<br><br>**OPINION** |

APPEARANCES:

Deborah L. Mains, Esq.
COSTELLO & MAINS, P.C.
1800 Horizon Way
Suite 800
Mount Laurel, NJ 08054
    Attorney for Plaintiff

William C. MacMillan, Esq.
LAW OFFICES OF IGOR STURM
101 Hopkins Avenue
P.O. Box 1672
Haddonfield, NJ 08033
    Attorney for Defendants

**SIMANDLE**, Chief Judge:

I.   **INTRODUCTION**

    This is an action brought by Vanessa Graham against her employers for failing to compensate her for overtime at the required higher overtime rate, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the New

Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-4.1, while she worked as a server supervisor from October 2012 through February 7, 2014.[1]

Defendants and Plaintiff have each filed for summary judgment on the two claims. [Docket Items 12 & 17.] Because Defendants have shown that the employment contract was intended to compensate Plaintiff for overtime at time and a half her regular hourly wage, Plaintiff has not raised a material factual dispute, and no reasonable jury could find on the present record that Defendant violated the overtime requirements of the FLSA or the NJWHL, the Court will grant summary judgment for Defendants and deny Plaintiff's motion.

## II.  BACKGROUND

The summary judgment record in this case is short, and the facts are largely undisputed.[2]

---

[1] Plaintiff also named "Hathaway's Restaurant and Lounge" and Evangelos Kyrtatas as defendants, but has since agreed to the dismissal of all claims against Evangelos Kyrtatas. (Pl. Br. [Docket Item 17-1] at 7.)

[2] Although both Plaintiff and Defendants cite to the deposition of Plaintiff Vanessa Graham, neither party attached the deposition transcript to the summary judgment record, and it is not properly before the Court. See Loc. Civ. R. 56.1(a) ("[T]he movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, . . . citing to the affidavits and other documents submitted in support of the motion.") The Court will therefore decline to consider those facts in the parties' Loc. Civ. R. 56.1 Statements which rely solely upon the Graham deposition unless the opponent has not

Plaintiff Vanessa Graham was hired in 2011 by Defendant Hathaway's Lodge, Inc. to work as a server at its restaurant, Hathaway's, and subsequently at its sister restaurant next door, Sweetwater at Hathaways, Inc. ("Sweetwater"). (Def. Statement of Material Facts ("SMF") [Docket Item 12-1] ¶¶ 1-2.)

Graham was promoted to the position of server supervisor in October 2012. The employment contract, dated October 1, 2012 and signed by both Graham and Defendants' President, George Kyrtatas, states,

> In accepting this position your pay structure will change from an hourly employee to a salary employee. Your salary will now be $750.00 for a 50-60 hour work week depending on the needs of SweetWater Bar and Grill. It is understood that the normal work week shall be 55 hours. . . . Any time worked less than the 50 hours will be a less than normal salary.

(Employment Contract, Ex. A to Pl. Br. [Docket Item 17-2].) The central dispute in this case concerns Graham's regular hourly wage under this contract and whether the contract incorporated overtime pay at the rate of one and one-half the regular hourly wage.

Defendants do not dispute that Graham is owed overtime pay

---

disputed the facts. See Johnson v. NovaStar Mort., Inc., Civ. No. 09-1799, 2011 WL 4549143, at *1 n.1 (D.N.J. Sept. 29, 2011) (Simandle, J.) (declining to consider unsupported allegations in plaintiff's responsive statement of material facts which cited to evidence that was not included in documents submitted to the court).

at one and a half times her regular hourly wage, but assert that her weekly salary included overtime pay. Kyrtatas testified that when he offered Graham the salary of $750 per week, he told her that it was for working "6 days, 10 hours a day, approximately 60 hours." (Kyrtatas Dep., Ex. A to Def. Br. [Docket Item 12-2] 15:5-9.) Kyrtatas came up with the $750 figure by setting her hourly wage at $10 per hour for the first 40 hours, adding $15 per hour for approximately twenty hours of overtime each week, and finally, adding an additional $50 for a total of $750. (Id. at 17:1-23.) He also testified that in June of 2013, Graham requested to reduce her schedule from working six days a week to working only five days a week. Kyrtatas granted her request and changed her salary to $625 per week for a 40-50 hour workweek. (Id. 20: 12-23.)

Graham, by contrast, argues that her weekly salaries were exclusive of overtime pay. She asserts in a response to an interrogatory that from October 1, 2012 through June 2, 2013, her "regular hourly rate" was "$18.75, "based upon the $750 I was paid for the week." The $18.75 hourly wage appears to have been calculated by dividing $750 by 40 hours. Thus, Graham asserts that her $750 weekly salary was based upon a 40-hour workweek. (Graham Interrog., Ex. B to Pl. Br. [Docket Item 17-2] at 5.) Taking $18.75 as her regular hourly rate, she calculates

4

her "hourly overtime wage [at] $28.13 per hour ($18.75 x 1.5)." (Id.) Graham asserts that she worked 60 hours each week, and claims in her interrogatory response that she was owed 20 hours of unpaid overtime wages at $28.13 per hour, or $562.60 per week for each of the 34 weeks between October 1, 2012 and June 2, 2013. (Id.)

Graham further claims in her interrogatory response that after her weekly salary was reduced to $625 beginning in June 2013, her hourly wage changed to $15.63. Graham appears to have calculated this new wage by dividing $625 by 40 hours, and therefore appears to argue that her $625 weekly salary was based upon a 40-hour workweek. (Id.) Based on this, she calculates her overtime wage at $23.45. She asserts that she continued to work 60 hours each week after June 2013, and was owed 20 hours of unpaid overtime wages at $23.45 per hour, or $469 per week for each of the 34 weeks between June 9, 2013 and February 7, 2014. (Id.)[3]

Graham's interrogatory response, however, is inconsistent with the position she takes in her opposition and cross-motion for summary judgment. In her brief, she argues that, according

---

[3] In total, Graham claimed in her interrogatory response that she was owed $35,074.40 in uncompensated overtime from October 1, 2012 to February 7, 2014.

5

to the employment letter which compensated her $750 per week for 55 hours of work, her regular hourly wage was $750 divided by 55, or $13.64, and thus her overtime wage, one and a half times her hourly wage, was $20.46 per hour. (Pl. Br. [Docket Item 17-1] at 4.) She asserts that she should have been paid at a rate of $13.64 per hour for 40 hours and $20.46 per hour for 20 hours of overtime, or $954.80 each week, for the entire period from October 1, 2012 through February 7, 2014. (Id. at 5.) She argues that because she was paid only $750, she was denied $204.80 overtime compensation each week. (Id.)

Plaintiff filed her Complaint on May 29, 2014. Count One asserts a violation of the FLSA, while Count Two asserts a violation of the NJWHL. Plaintiff argues under both counts that Defendants failed to pay her overtime compensation for all of the hours she worked over 40 hours per week. (Compl. [Docket Item 1] ¶¶ 17, 24.) Defendants moved for summary judgment on both counts, arguing that Plaintiff's employment contract was intended to cover all overtime pay in accordance with the statutory requirements. (See Def. Br. [Docket Item 12] at 7-8; Def. Reply [Docket Item 18] at 2-3.) Plaintiff subsequently filed an opposition together with a cross-motion for summary judgment, arguing that her weekly salary did not adequately compensate her for overtime. (Pl. Br. [Docket Items 17] at 5-8.)

**III. STANDARD OF REVIEW[4]**

At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). In reviewing a motion for summary judgment, the court is required to examine the evidence in light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. Hunt v. Cromartie, 526 U.S. 541, 552 (1999); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The non-moving party "'need not match, item for item, each piece of

---

[4] The Court exercises subject matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331, and exercises supplemental jurisdiction over Plaintiff's NJWHL claim pursuant to 28 U.S.C. § 1367.

evidence proffered by the movant,'" but must simply present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. Boyle v. Cnty. of Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998) (quoting Anderson, 477 U.S. at 252).

The standard by which the Court decides a summary judgment motion does not change when, as here, the parties file cross-motions. See In re Cooper, 542 F. Supp. 2d 382, 385–86 (D.N.J. 2008). When ruling on cross-motions for summary judgment, the court must view the evidence on each motion in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**IV. DISCUSSION**

Congress's purpose in enacting the Fair Labor Standards Act ("FLSA") "was to protect all covered workers from substandard wages and oppressive working hours." Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 739 (1981). Under section 7 of the FLSA, employers are required to pay their employees at least one and one-half times their regular pay rate for any time they work in excess of forty hours per week. 29 U.S.C. §

207(a)(1);[5] see also Parker v. NutriSystem, Inc., 620 F.3d 274, 277 (3d Cir. 2010).[6] Similarly, the New Jersey Wage and Hour Law ("NJWHL") provides that "[e]very employer shall pay to each of his employees" the overtime rate of 1 1/2 times the employee's regular hourly wage "for each hour of working time in excess of 40 hours in any week." N.J.S.A. 34:11-56a4.

The dispute in this case is over whether Graham's employment contract was intended to include overtime premiums for hours worked over 40 each week. The employment contract states only that Graham be paid "$750.00 for a 50-60 hour work week," without specifying a regular hourly rate[7] and without mentioning overtime payment. However, it specifically notes a

---

[5] 29 U.S.C. § 207(a)(1) states:
> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce . . . or is employed in an enterprise engaged in commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

[6] There is no dispute that Defendants are subject to the overtime requirements of the FLSA. (See Def. Br. at 8.)

[7] The term "regular rate" in § 207(a)(1) means the "regular rate of compensation," and "refers to the hourly rate actually paid the employee for normal, non-overtime workweek for which he is employed." Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424 (1945). Every contract of employment "explicitly or implicitly includes a regular rate of pay for the person employed." Bay Ridge Operating Co. v. Aaron, 334 U.S. 446, 461 (1948).

normal workweek of 55 hours, or 15 hours above a regular workweek under the FLSA. The fact that the contract indicates that Plaintiff would be working overtime every single week but does not state that Plaintiff would be paid additional overtime premiums each week suggests that the $750 sum was intended to include all compensation, including compensation for overtime premiums.[8]

Kyrtatas' testimony supports this interpretation. He testified that the salary was intended to compensate Graham for overtime each week at one and a half times the regular rate, and that when he was deciding what a "reasonable" weekly salary would be, he based his calculation on a regular rate of $10 per hour and an overtime rate of $15 per hour. (Kyrtatas Dep. 17:1-13.) Plaintiff makes no argument that this type of contract is unlawful under the FLSA or NJWHL: she does not argue that it is impermissible under either statute to prohibit an employer and employee from agreeing upon a workweek that includes regularly scheduled overtime at a total weekly salary that includes

---

[8] Plaintiff has not suggested that this type of contract – that is, one which provides a total weekly salary which includes payment for overtime, without specifying the regular hourly rate or overtime rate – runs afoul of the FLSA. See Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424 (1945) ("As long as the minimum hourly rates . . . are respected, the employer and employee are free to establish this regular rate at any point and in any manner they see fit.").

adequate compensation for both regular and overtime hours.

Nor does Plaintiff point to anything in the record that would contradict Kyrtatas' version of facts. She makes no argument at all that the employment contract was intended to exclude payment for overtime premiums. Nor does she contend that when she signed the employment contract, she expected to separately receive payment on top of the agreed-upon sum she received every week. On the contrary, Kyrtatas testified that before the contract was signed, he "made it very clear" to Plaintiff that she would work approximately sixty hours a week and told her that her weekly salary would be $750. (Id. 15:5-19.) When Plaintiff later requested a reduction in her hours, Kyrtatas told her that she could work 40-50 hours for a salary of $625 each week, again with no mention of additional compensation. (Id. 20:12-23.) Nothing in Kyrtatas' deposition transcript indicates that overtime premiums were ever discussed, and there is nothing in the record to suggest that Plaintiff ever inquired with her employer about not receiving overtime premiums during the approximately 16 months she claims payment was withheld.[9]

---

[9] The fact that Plaintiff stated in response to an interrogatory that she understood the $750 per week to cover only 40 hours, and then changed her position to 55 hours in her opposition and cross-motion for summary judgment also shows the inconsistent

11

Plaintiff makes only a single argument in opposition to Defendants' motion and in support of her motion for summary judgment: she argues that 29 C.F.R. § 778.113(a) requires the regular hourly rate of pay to be computed "by dividing the salary by the number of hours which the salary is intended to compensate," and that, based upon a salary of $750 for a 55-hour workweek, Plaintiff should be compensated at a regular rate of $13.64 and a resulting overtime rate of $20.46. She argues that under the plain language of § 778.113, "it is clear that plaintiff's compensation *did not* account for her first 40 hours of work plus an additional 20 hours at the overtime rate." (Pl. Br. at 5.)

The Court does not agree. 29 C.F.R. § 778.113 is only a general provision and describes broadly how regular and overtime pay for salaried employees are computed.[10] The next provision, § 778.114, describes specifically how to calculate the hourly wage for employees with fixed salaries and fluctuating weekly hours that may exceed 40. Subsection (a) explains that the above

---

theories of her claims. In any event, her subjective understanding does not displace the objective language of the Employment Contract that her compensation would be $750 in any week where she worked between 50-60 hours, and that her compensation would be reduced if she worked less than 50 hours.
[10] "Salaried employees" are employees who are "employed solely on a weekly salary basis." 29 C.F.R. § 778.113(a).

12

calculation is used to calculate the hourly rate "[w]here there is a *clear mutual understanding* of the parties that the fixed salary is compensation (*apart from overtime premiums*) for the hours worked each workweek, whatever their number . . . ." 29 C.F.R. § 778.114(a) (emphasis added). Subsection (b) provides an example hourly rate calculation based on a $600 weekly salary and similarly specifies that it is for an employee whose salary "is paid with the understanding that it constitutes the employee's compensation, *except for overtime premiums*, for whatever hours are worked in the workweek." Id. § 778.114(b) (emphasis added). Moreover, 29 C.F.R. § 778.323 notes that the what the parties intend is important: "As in all cases of employees hired on a salary basis, the regular rate depends in part on the agreement of the parties as to what the salary is intended to compensate."

These provisions make clear that the hourly rate calculation championed by Plaintiff is used in situations where both parties agree that the weekly salary is exclusive of overtime premiums. That is not the case here. There is evidence from Kyrtatas that the parties intended the contract to include all compensation for overtime. Although Plaintiff is entitled to the benefit of all favorable inferences at summary judgment, Plaintiff has failed to point to even a scintilla of evidence

13

from which the Court may infer that she and Defendants had a "clear mutual understanding" that her weekly salary would not include compensation for overtime premiums. Plaintiff does not attempt to rebut Kyrtatas' testimony, and makes no argument at all in her brief about the intention of the parties – her argument rests solely on the language of § 778.114.

Based on the record, *which Plaintiff has not attempted to refute*, and the arguments presently before the Court, the Court concludes that no reasonable jury could find that Plaintiff was deprived of overtime compensation in violation of the FLSA and NJWHL. The Court will therefore grant summary judgment in favor of Defendants. Because Defendants have shown that a reasonable jury could find in their favor, the Court will deny Plaintiff's cross-motion.

**IV. CONCLUSION**

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment and deny Plaintiff's cross-motion for summary judgment. The accompanying Order will be entered.

| **December 9, 2015** | **s/ Jerome B. Simandle** |
|---|---|
| Date | JEROME B. SIMANDLE |
| | Chief U.S. District Judge |